In re Neil SOLOMON, M.D., Debtor.

Bankruptcy No. 93–5–6357–SD.

United States Bankruptcy Court,
D. Maryland.

April 20, 1994.

Alan M. Grochal, Tydings & Rosenberg, Baltimore, MD, for debtor.

Edward C. Dolan, James H. Lystad, Hogan & Hartson, Bethesda, MD, Professor Charles Shafer, Baltimore, MD, for creditors.

Ellen Cosby, Baltimore, MD, Chapter 13 Trustee.

## MEMORANDUM OPINION ON IMPACT OF PENSION EXEMPTION CLAIMS ON CHAPTER 13 PLAN, AMENDED UPON RECONSIDERATION

E. STEPHEN DERBY, Bankruptcy Judge.

### 1. Issues Presented.

The opposition to Debtor's Chapter 13 plan has raised several issues that will be resolved at this time based upon material facts that are not in dispute. First, is Debtor eligible to be a debtor under Chapter 13? Second, has Debtor overfunded his otherwise exempt pension plans, so that the overfunded portions should be included in determining whether Debtor's plan satisfies the best interests of unsecured creditors test under 11 U.S.C. § 1325(a)(4)? Third, must Debtor's disposable income for measuring the plan payments that are required under 11 U.S.C. § 1325(b)(1)(B) include permitted, but not required, distributions from Debtor's exempt pension assets that Debtor has not elected to commence taking? The resolution of these questions will determine whether an additional evidentiary hearing is required on confirmation of Debtor's Chapter 13 Plan.

The court concludes for the reasons set out in this opinion that Dr. Solomon is eligible to file this Chapter 13 case; that his largest Individual Retirement Account is exempt under Maryland law; and that a reasonable income expectation must be attributed to Dr. Solomon's individual retirement accounts in determining whether Dr. Solomon has applied all of his projected, disposable income to make payments under his plan, even if he has not elected to commence taking distributions from a particular account. Because of these conclusions, an additional evidentiary hearing is necessary to resolve, among other issues, objections to Debtor's exemption of his remaining retirement accounts, objections to Debtor's good faith, and objections to the calculation of Debtor's disposable income for his plan.

### 2. Findings of Fact.

On September 20, 1993, Neil Solomon, M.D., filed a voluntary petition under Chapter 13 of the Bankruptcy Code. The only creditors scheduled by Debtor were four unsecured, nonpriority plaintiffs in tort suits against him. On Debtor's Statement of Financial Affairs he discloses that in the 90 days immediately preceding the commencement of the case he paid $71,390.84 on debts and reduced all other balances he owed to zero. Debtor scheduled the four tort claims as contingent, unliquidated and disputed, and he stated the amount of the claims as zero. The tort claimants are referred to herein as the Creditors. At the hearing on an unsuccessful motion by the Creditors to modify the automatic stay to pursue their lawsuits, Debtor's counsel represented that Debtor would not object to the claims of the Creditors, and he stipulated and conceded that the Creditors would receive all of the net plan proceeds.

The Creditors have filed claims that aggregate $160,030,000. They are three women and the spouse of one. Three lawsuits are attached to the claims. Each contains a negligence count and counts alleging intentional torts. Each lawsuit alleges, *inter alia*, improper sexual conduct by Debtor with the woman plaintiff while the woman was Debtor's patient. To protect the privacy of the Creditors, they have been authorized to proceed under fictitious names, namely, Jane Coe, Jane and John Roe, and Mary Doe.

Debtor scheduled assets at current market value of $2,184,645.00, of which he claimed as

exempt $2,140,501.25, leaving $44,143.75 in non-exempted assets. Debtor's Statement of Financial Affairs discloses in the year preceding his commencement of this case, gifts to individuals who appear to be family members in the aggregate amount of $52,477.00. Of the property claimed as exempt, $649,-077.00, including Debtor's family home and certain investments, is claimed exempt as tenancy by the entirety property, namely, property owned by husband and wife jointly with rights of survivorship that is not subject to the claims of only one spouse under Maryland common law. Debtor has claimed another $1,485,391.00 as exempt retirement accounts, of which $1,413,888.00 is held in three Individual Retirement Accounts (I.R.A.s). The three I.R.A.s are:

| TransAmerica Life No. 007290536: | $921,377.00 |
| TransAmerica Life No. 007080701: | $234,000.00 |
| First National Bank No. 160691903: | $258,511.00 |

Admitting some facts that are alleged by the Creditors, and conceding other facts as not material for purposes of argument, Debtor argues that the Creditors' objection to Debtor's exemption of his three I.R.A.s should be overruled as a matter of law. From its independent review of the transcript of Creditors' Bankruptcy Rule 2004 examination of Alan Kanter, the independent pension advisor and administrator retained in 1990 to put the affairs of the Dr. Neil Solomon Medical Professional Association Pension Plan in order, the court has concluded that these admitted or conceded facts and Debtor's legal defense relate only to the TransAmerica Life I.R.A. with a balance of $921,377.00. That account was established on June 28, 1988 with a single premium payment of $827,347.09. Kanter Tr. 89. This amount is the same amount that was distributed to Debtor when he terminated his participation in the Professional Association's Pension Plan in 1988. *Id.* at 107–108. Accord, Application for Determination Upon Termination [of the Plan], Form 5310, dated 11/6/91, ¶ 15(j). The other TransAmerica I.R.A. was established on December 31, 1982. *Id.* at 92, 94. There has been no undisputed evidence of the source of funding for either this second TransAmerica I.R.A. or Debtor's First National Bank I.R.A.. Both the Debt-

or and the Creditors have accepted Mr. Kanter's testimony in their arguments.

The Dr. Neil Solomon Medical Professional Association established a qualified, employees' defined benefit pension plan in 1977. In 1988 Debtor terminated his participation in the plan as an employee. He received the distribution previously described of approximately $827,000, which he rolled over into an I.R.A..

Over the years, the Dr. Neil Solomon Medical Professional Association had contributed more to its employee pension plan than was allowable under Internal Revenue Code regulations as a deduction when made. The Creditors assert that these excess contributions amounted to at least $100,000.00. The Professional Association's Forms 5330—Return of Excise Taxes Related to Employee Benefit Plans—for the year ended June 30, 1987 showed taxable excess contributions of $15,490.00 and for the short year ended December 31, 1987 showed additional taxable excess contributions of $85,307.00. Kanter Tr. 97–98. While there is no documented information as to whether there were excess contributions in prior years, those years were closed, and there is no deduction issue for the IRS for any open year. *Id.* at 33, 73, 79.

When Debtor terminated his participation in the Professional Association's Pension Plan, the distribution that Debtor received did not exceed the limitation on benefits to which he was entitled under Section 415 of the Internal Revenue Code, determined actuarially. Kanter Tr. 10–11, 13, 59. Upon termination of the Plan as of January 1, 1992, the Plan was qualified, but overfunded. *Id.* at 7, 28–29. The remaining two participants received their maximum benefit under the Section 415 actuarial limitation, and the balance reverted to the Professional Association where it was taxed. *Id.* at 8, 15–16, 27, 102–103. The only persons who were ever members of the Professional Association's pension plan were Debtor, Debtor's spouse and one of Debtor's sons.

Debtor's Chapter 13 Plan proposes a plan payment by Debtor of $750.00 per month for an extended term of five years, i.e. 60 months. The total of plan payments by Debtor would be $45,000.00, which is more

than the scheduled value of the assets that Debtor has not claimed as exempt. Effective January 1, 1994, Debtor has scheduled combined monthly family income of $3,260.00, consisting of $1,114.00 in interest and dividends of Debtor and his spouse, and $2,146.00 in pension income from his Maryland State pension. Estimated, monthly family expenses are scheduled as $14,643.00, leaving a substantial deficit before plan payments. Although Debtor disclosed 1992 income from salary, publishing and consulting of $656,951.00, these sources of income have been eliminated since the Creditors' allegations were made public and Dr. Solomon surrendered his medical license to practice.

Debtor is 61 years of age. He has represented through counsel that he will use the payments from his Maryland State pension and his dividend and interest income to fund his Chapter 13 plan payments of $750.00 monthly and about $1,900.00 of reasonable family living expenses. The remaining family expenses will be paid from exempt property, but Debtor does not intend to withdraw money from his I.R.A.s for these purposes during the term of his plan.

### 3. Conclusions of Law.

This case presents fundamental, public policy questions about the function and purpose of Chapter 13 because of the wide disparities among the large, aggregate amount of the Creditors' claims, the relatively modest proposed plan payments, and the high percentage of not insubstantial assets that Debtor has claimed as exempt. Further, under a Chapter 7 liquidation the Creditors' claims, if proven, could be nondischargeable, for example, under 11 U.S.C. § 523(a)(6) as debts for wilful and malicious injury by the Debtor. However, under Chapter 13's broader discharge, there is no exception from discharge for intentional torts of the type alleged by the Creditors. 11 U.S.C. § 1328(a). See 2 Lundin, Chapter 13 Bankruptcy § 9.10 (1992). The apparent irony is that the broader discharge offered by Chapter 13 was one of several incentives adopted by Congress to induce individual creditors to elect a Chapter 13 payment plan, rather than a Chapter 7 liquidation, in order to increase payments to creditors. For example, in Chapter 13 there is a codebtor stay as to

consumer debts; the debtor remains in possession of all property of the bankruptcy estate; and creditor approval of debtor's plan is not required. 11 U.S.C. §§ 1301(a), 1306(b), 1325. See *In re Rimgale,* 669 F.2d 426, 427–428 (7th Cir.1982).

### A. *Debtor's Eligibility for Chapter 13 Relief.*

■ Only an individual with less than $100,000.00 of noncontingent and liquidated unsecured debt is eligible to file a Chapter 13 case. As applicable here, Section 109(e) of the Bankruptcy Code provides:

> (e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 ... may be a debtor under Chapter 13 of this title.

11 U.S.C. § 109(e).

The Creditors first argue that Debtor is ineligible because he said he does not owe any debts when he scheduled the amount of the Creditors' claims as zero. This contention is without substance. The Creditors had pending tort lawsuits against Debtor that claimed some $160,000,000.00 in damages. The lawsuits were disclosed by Debtor and scheduled as disputed, unliquidated and contingent.

■ A debt is defined as liability on a claim, and claim is broadly defined to include rights to payment that are disputed, unliquidated or contingent. 11 U.S.C. §§ 101(5)(A), (12). Therefore, whether Debtor disputes the claim and asserts it is worthless or acknowledges the amount of the claim and asserts it is disputed is not material to the issue of Debtor's eligibility to file Chapter 13.

■ In the alternative, the Creditors argue that their claims, which indisputably exceed $100,000.00, are neither contingent nor unliquidated because Debtor has not, and has represented he will not, object to them. Therefore, the claims are deemed allowed as filed, and they are neither contingent nor unliquidated for purposes of this case. 11 U.S.C. § 502(c). As a result, the Creditors assert that Debtor is not eligible to file a Chapter 13 case. See *id.* at § 109(e).

The Creditors' argument on this point does not withstand scrutiny. Section 109(e) requires the determination whether a claim is contingent or unliquidated to be made "on the date of the filing of the petition." 11 U.S.C. § 109(e). On the date of filing, the state tort claims had not been reduced to judgment, and Debtor had not admitted an amount was due to the Creditors. Debtor's first response to the Creditors' claims was to schedule them in this case as contingent and unliquidated, as well as disputed.

Debtor's pronouncement that he would not object to the Creditors' claims in this case, thus allowing them to stand deemed allowed for purposes of his plan, did not retroactively liquidate the claims as of commencement of the case. Rather, the pronouncement constituted a recognition that no interest of Debtor was served by objecting. The Creditors would receive all plan payments, regardless of what was determined to be the amount of their claims, and the expense of litigation was likely to exceed what Debtor had concluded he should pay under his proposed plan. It would not improve the Creditors' distribution, further the Debtor's fresh start, or be a productive use of judicial resources to require Debtor to pursue an objection that could not have a positive economic impact on the bankruptcy case, just for Debtor to avoid loss of his Chapter 13 eligibility.

 The Creditors' question Debtor's good faith because their claims are Debtor's only unsatisfied claims to be affected by this case. 11 U.S.C. § 1325(a)(3). However, good faith is a factual determination to be made based upon the totality of the circumstances. *Neufeld v. Freeman*, 794 F.2d 149, 152–153 (4th Cir.1986); *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir.1982). The single factor of Debtor's statutory eligibility to file a Chapter 13 case in these atypical circumstances is not a shortcut to consideration of the totality of the circumstances in evaluating good faith. Debtor meets the statutory test of eligibility to file this Chapter 13 case.

B. *The Exempt Status of Debtor's Largest I.R.A.*

 In Maryland the exemptions recognized in bankruptcy are a matter of State law. The Bankruptcy Code will recognize a state's exemptions to the exclusion of exemptions allowed under the Code, if the state so elects. 11 U.S.C. § 522(b). Maryland has elected to make the Bankruptcy Code exemptions inapplicable. Md.Cts. & Jud.Pro. Code Ann. § 11–504(g) (1989 Repl.Vol.) (hereafter Md.Cts.Code).

Maryland exempts interests in certain retirement plans from the claims of a debtor's creditors. The exemption provides, as material to the issue presented:

(h) *Interest in retirement plan.*—(1) In addition to the exemptions provided in subsections (b) and (f) of this section and any other provisions of law, any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan qualified under § 401(a), § 403(b), § 408, § 414(d), or § 414(e) of the United States Internal Revenue Code of 1986, as amended, or § 409 (as in effect prior to January 1984) of the United States Internal Revenue Code of 1954, as amended, shall be exempt from any and all claims of the creditors of the beneficiary or participant, other than claims by the Department of Health and Mental Hygiene.

\* \* \* \* \* \*

(4) If a contribution to a retirement plan described under paragraph (1) of this subsection exceeds the amount deductible under the applicable provisions of the United States Internal Revenue Code of 1986, as amended, the portion of that contribution that exceeds the amount deductible, and any accrued earnings on such a portion, are not exempt under paragraph (1) of this subsection.

Md.Cts.Code § 11–504(h).

 Exemptions, under Maryland law, should be liberally construed. As stated in *Muhr's Sons v. Pinover*, 67 Md. 480, 487, 10 Atl. 289 (1887):

The object of the law [creating an exemption] was to prevent a debtor from being stripped of all his property, and *it ought to be liberally construed.* (Emphasis added.).

Accord, *In re Taylor*, 312 Md. 58, 71, fn. 5, 537 A.2d 1179 (1988). Indeed, exemptions are created pursuant to a mandate of the

Maryland Constitution. Article III, § 44 provides:

> Laws shall be passed by the General Assembly, to protect from execution a reasonable amount of the property of the debtor.

As thus stated, the State exemptions that are recognized in bankruptcy cases to exclude assets from a bankruptcy estate are more precisely described as exemptions from execution on a judgment obtained by a creditor. See Md.Cts.Code § 11–504(b).

■ One purpose for exemptions is to prevent an improvident debtor and the debtor's family from unnecessarily becoming dependents of the state, requiring public support. Our Fourth Circuit Court of Appeals has described the purpose served by exemptions in the following manner, referring to Maryland law on the exemption of life insurance policy cash values, in a bankruptcy case:

> The theory of the trustee is that the cash surrender value is not "money payable in the nature of insurance," nor payable upon the contingency mentioned in the statute, namely, the death of the insured. It is said that by the express provisions of the Bankruptcy Act, as construed by the Supreme Court in Cohen v. Samuels, supra, and other cases, the cash surrender value is not so payable. But we think this is too narrow and too literal a construction of the Maryland statute. While there are a few cases which hold that exemption statutes should be strictly construed, *the better and almost universal rule is that such statutes should receive a liberal construction in favor of the debtor in order to advance the humane purpose of preserving to the unfortunate or improvident debtor or his family the means of obtaining a livelihood and prevent them from becoming a charge upon the public.* [Citations omitted.]
>
> We think the plain purpose of the statute was to encourage men to insure their lives for the benefit of their families.

*Hickman v. Hanover,* 33 F.2d 873, 874 (4th Cir.1929) (emphasis added).

■ Maryland's exemption of interests in certain retirement plans was enacted in 1988. Md.Cts.Code § 11–504(h). The preamble stated in relevant part that the Act was "FOR the purpose of exempting certain rights and interests in certain retirement plans from the execution of a judgment; ..." 1988 Laws of Md., Ch. 613. From the language of this exemption, it is the public policy of Maryland to protect from creditors certain assets set aside to support individuals financially in retirement. There is no dollar limit on this State exemption. In *In re Taylor, supra,* the Maryland Court of Appeals declined to limit the monetary value of the tools of the trade exemption where the General Assembly had not explicitly done so.

■ To prevent abuse by debtors to the disadvantage of creditors, the statutory exemption requires the assets to be set aside in a retirement plan that meets the tests for being qualified under specific sections of the federal Internal Revenue Code. Md. Cts.Code § 11–504(h)(1). Further, even if a retirement plan is qualified, as a further protection, the exemption excludes those assets in the plan generated by contributions that exceed the amount deductible under the Internal Revenue Code. *Id.* at § 11–504(h)(4). These statutory limitations on the retirement plan exemption appear to this court to satisfy the "reasonable amount" standard in the exemption mandate of the Maryland Constitution. Md.Const., Art. III, § 44.

In response to the Creditors' objection, Debtor's justification for his exemption of the $921,377.00 I.R.A. is that the I.R.A. is a qualified retirement plan under § 408 of the Internal Revenue Code (herein sometimes I.R.C.). 26 U.S.C. § 408(a). Therefore, Section 11–504(h)(1) of the Maryland exemption statute is satisfied. Md.Cts.Code § 11–504(h)(1). Further, this I.R.A. was funded by a permitted withdrawal within the actuarial limitations of I.R.C. § 415 from Debtor's employer's defined benefit pension plan that itself was qualified under I.R.C. § 401(a). 26 U.S.C. § 415(b)(1). The withdrawal was rolled over tax free to fund the I.R.A., as permitted by the Internal Revenue Code. *Id.* at §§ 408(a)(1), 402(c). Consequently, the contribution limitation on the Maryland exemption that is in Section 11–504(h)(4) was not applicable. Md.Cts.Code § 11–504(h)(4). Either subsection (h)(4) never came into

play, or it was satisfied by the nontaxable nature of the rollover deposit used to establish Debtor's I.R.A.

■■ While the Creditors do not dispute that the I.R.A. is a qualified retirement plan, they contend there is a factual issue as to how much of the I.R.A. is not exempt under Maryland subsection 11–504(h)(4), because it was funded in part by nondeductible contributions. The Creditors argue that the Professional Association's defined benefit plan was concededly overfunded, and there were at least $100,000.00 in nondeductible contributions. Since the money in Debtor's I.R.A. can be traced to the contributions in the Professional Association's retirement plan, and since some of those contributions exceeded the amount that was deductible under the Internal Revenue Code, Md.Cts.Code § 11–504(h)(4) is applicable and requires an apportionment of exempt and nonexempt retirement plan assets.

The Creditors' argument is incorrectly focused. Md.Cts.Code § 11–504(h)(4) is applicable only to "a contribution to a retirement plan described under paragraph 1 of this subsection." The retirement plan described in paragraph (1) that Debtor has claimed exempt is Debtor's I.R.A. qualified under I.R.C. § 408. Therefore, the focus under Md.Cts.Code § 11–504(h)(4) must be on the rollover contribution that Debtor used to fund the I.R.A., and not on the Professional Association's contributions to its defined benefit retirement plan that was qualified under I.R.C. § 401(a).

The character of the rollover contribution is that it was a permitted contribution to an I.R.A. under I.R.C. § 408(a), and it was excluded from Debtor's gross income. 26 U.S.C. §§ 408(a)(1), (d)(1), and (d)(3). The Professional Association's defined benefit pension plan qualified under I.R.C. § 401(a) is not sought to be exempted, and contributions to it are not the contributions described in Md.Cts.Code § 11–504(h)(4).

■■ Nevertheless, the Creditors urge the court to trace the rollover contributions to Debtor's I.R.C. § 408 I.R.A. back to the contributions to the Professional Association's I.R.C. § 401(a) defined benefit pension plan. Such tracing is not appropriate. First, I.R.C. § 415 limited the benefit Debtor was

entitled to withdraw from that plan when he terminated his participation. The benefit limit checked Debtor's ability to benefit from excess contributions by the Professional Association that were nondeductible under I.R.C. § 404. Second, it would be folly, and contrary to the purpose of the qualified retirement plan exemption, to adopt a general rule that every terminated employee who rolled over a former employer's pension distribution into a qualified I.R.A. placed those retirement funds at the risk of an audit of the former employer's pension fund contributions. Third, it appears that the overfunding of the Professional Association's pension plan was left in the plan after Debtor received his lump sum distribution, and it was ultimately returned to the Professional Association and taxed.

■■ The Creditors further argue that Md.Cts.Code § 11–504(h)(4) excludes from the qualified retirement plan exemption a contribution, including earnings accrued thereon, "that exceeds the amount deductible" under the Internal Revenue Code; and rollover contributions are not deductible. Rather, they are exclusions from gross income. To accept this argument would violate the principle that exemptions are to be liberally construed. Whether the contribution was an exclusion from gross income or a deduction from taxable income, the effect is the same, namely, it was a nontaxable, permitted contribution to a qualified retirement plan. The thrust of Md.Cts.Code § 11–504(h)(4), namely, to prevent excess, nondeductible contributions, and the earnings thereon, to a qualified retirement plan from being placed beyond the reach of creditors, is satisfied. In this context there is no difference in substance between the technical tax concepts of deductible and excludable from income. Debtor's $921,377.00 qualified I.R.A. that was funded by the permitted rollover of a lump sum payment from the Dr. Neil Solomon Medical Professional Association Pension Plan within the I.R.C. § 415 limitation on benefits is exempt under Md. Cts.Code § 11–504(h).

### C. *Debtor's Disposable Income.*

■■ Dr. Solomon's Chapter 13 plan may not be confirmed over the Creditors' objec-

tion unless "the plan provides that all of the debtor's projected disposable income to be received in . . ." the first three years will be used for plan payments. 11 U.S.C. § 1325(b)(1)(B). This requirement is in addition to the best interests of creditors test that requires a Chapter 13 plan to pay on each unsecured claim at least the present value of what would be paid on such claims if Debtor's estate was liquidated under Chapter 7 on the effective date of the plan. *Id.* at § 1325(a)(4). The reason why the determination of what assets Debtor may exempt was important is that if an asset is not exempt, its value must be included in determining how much Debtor's plan must pay to satisfy the best interests of his creditors. However, the disposable income requirement focuses on projected income that will be available to fund Debtor's plan.

■ The requirement that all of a debtor's disposable income that is not necessary to support the debtor and the debtor's dependents be devoted to Chapter 13 plan payments was added to the Bankruptcy Code by the Consumer Credit Amendments within the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. No. 98–353, Title III, Subtitle A, § 317. The purpose of the amendment was to provide a meaningful standard for determining what portion of a debtor's income must be devoted to a Chapter 13 payment plan. See Sen. Rep't No. 65, 98th Cong. 1st Sess. 20–22, 64 (1983) (that refers to a provision in S. 445 comparable to that in H.R. 5174, which was enacted). The courts had utilized widely different approaches in attempting to assess what level of Chapter 13 plan payments constituted a good faith proposal. *Id.* See 11 U.S.C. § 1325(a)(3). Further, the best interests of creditors test was not meaningful because most consumer debtors have little nonexempt property and because the best interests test is asset based, not income based. *Id.* The objective was summarized by the Senate Judiciary Committee as follows:

> A chapter 13 proceeding involves substantial benefits to the debtor who is able to retain his property, avoid most nondischargeable debts, and cram down debts of secured creditors. The *quid pro quo* for such benefits would seem to be a substantial effort by the debtor to pay his debts.

Of course, the first criterion in such cases must be the debtor's obligations to support himself and his family. But beyond that, it is necessary to have a definite standard delineating how much of the debtor's future income should be committed to the plan.

*Id.* at 21.

■ Disposable income, as relevant in this case, "means income which is received by the debtor and which is not reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor; . . . ." 11 U.S.C. § 1325(b)(2)(A). There is absolutely no language in the disposable income test or definition in Section 1325(b) to suggest that disposable income is limited to income that is not exempt or from nonexempt assets. To the contrary, it is consistent with the premises of Chapter 13 that a debtor's income from all sources, including income from exempt assets, be included in the determination of disposable income.

■ Only an individual with regular income is eligible to be a debtor under Chapter 13. 11 U.S.C. §§ 109(e), 101(3). Income is different from property of the estate, and there is nothing in Chapter 13 to suggest that the income to support a plan must be property of the estate. 1 Lundin, Chapter 13 Bankruptcy §§ 1.38, 1.43 (1992). Specifically, regular income to qualify a debtor for Chapter 13 may include welfare, pension and social security income. H.R.Rep. No. 595, 95th Cong., 1st Sess. 311–312 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 24 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 6268–6269, 5810. Indeed, in this case the income that Debtor projects to support his plan, as well as the maintenance and support of his family, relies primarily on income from his Maryland State pension that he has claimed is exempt and from other exempt assets.

■ There is also nothing in 11 U.S.C. § 1325(b) that requires the source of income that is taken into account in determining disposable income to be property of the bankruptcy estate. As previously discussed, exempt income may be considered, although

it has been exempted as property of the estate. Further, the income of a non-filing spouse is considered by most courts in calculating projected disposable income. *E.g., In re Belt,* 106 B.R. 553 (Bankr.N.D.Ind.1989); 1 Lundin, *supra,* at § 5.3.

■ Chapter 13 must be elected voluntarily by a debtor. There cannot be an involuntary Chapter 13 case filed against an individual debtor; and provided an individual has not previously converted a case to Chapter 13 from another chapter, a debtor may voluntarily dismiss a Chapter 13 case at any time. 11 U.S.C. §§ 303(a), 1307(b). Only the debtor may file a Chapter 13 plan. *Id.* at § 1321. Therefore, at least where a debtor elects to use exempt income to satisfy the requirements of Chapter 13, the court is justified in considering the debtor's exempt income to determine if the requirements of Chapter 13 are satisfied, including the disposable income test. To preserve the integrity of the court's consideration, all exempt income of a debtor that is available to the debtor should be taken into account.

A debtor's social security and pension income, which was exempt under state law, was held in *In re Schnabel,* 153 B.R. 809 (Bankr.N.D.Ill., E.D.1993) to constitute Section 1325(b) disposable income that should be included in determining the amount the debtor was required to pay under his Chapter 13 plan. The court rejected the debtor's argument that his exempt income represented disposable income only to the extent that he voluntarily elected to contribute it to the Chapter 13 plan, since under a Chapter 7 asset liquidation creditors would receive nothing. Among other points, the court noted that Chapter 13, as reinforced by the Consumer Credit Amendments of 1984, is intended to reflect the economic realities of consumer credit that is income based. *Id.* at 818; Sen.Rep't No. 65, *supra,* at 20; Pub.L. No. 98–353, *supra* at Title III. As summarized by the *Schnabel* court:

Allowing debtors with exempt income to exclude it from the amount they are required to pay under a Chapter 13 plan would thwart the legislative intent that consumer lenders be able to look to the debtor's future income as a basis for consumer loans. To hold otherwise would inhibit the extension, or increase the cost,

of consumer credit, undermining the amendments.

153 B.R. at 818.

■ In the case *sub judice,* of course, the Creditors are not consumer lenders. However, since Debtor is attempting to use a Chapter designed for individual, consumer debtors, he must conform to its standards. Further, from the debtor's perspective Chapter 13 protects a debtor's fresh start by allowing the debtor to keep all of the debtor's assets, both exempt and nonexempt, in return for payments out of future income and a discharge delayed until completion of the plan. 11 U.S.C. §§ 1306(b), 1328(a). The approach contrasts to Chapter 7 where a debtor's fresh start is protected by allowing the debtor to retain only exempt assets, but to receive a prompt discharge. *Id.* at §§ 522(b), 727; Bankr.Rule 4004(c). This juxtaposition was also set forth in *Schnabel.*

However, [the] significance [of exemptions] is greatly diminished in a Chapter 13, where the fresh start is protected by the debtor's retention of non-disposable income, rather than by exempt assets.... Legislative history indicates that in a liquidation exemptions are meant "to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge...." A Chapter 13 debtor, on the other hand, may keep all its assets, exempt or not, in return for repayment of creditors out of future income. Where the Debtor is assured of an income sufficient to meet his basic needs, his fresh start is not imperiled by requiring him to make payments to creditors out of his social security and pension benefits, especially where, as here, it is those benefits that he proposes to use to fund his plan.

153 B.R. at 817. Consistently, the court in *Schnabel* also held that the non-debtor spouse's social security income, albeit exempt, had to be included because her expenses were included in the expenses for the joint household. *Id.* at 818.

■ Additional support for the conclusion reached here is case law interpreting parallel

language in 11 U.S.C. § 522(d)(10)(E). Section 522(d) contains the Bankruptcy Code's federal exemptions that Maryland law explicitly makes inapplicable. However, a principle of statutory construction is that Congress presumptively intends the same terms to have the same meaning in different provisions of the same statute. *Patterson v. Shumate*, 504 U.S. ——, ——, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992). Section 522(d)(10)(E) provides an exemption for pension income, *inter alia*, "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." Compare 11 U.S.C. § 522(d)(10)(E) and § 1325(b)(2)(A). Section 522(d)(10)(E) was enacted before Section 1325(b).

In quantifying this exemption in particular circumstances, it has been held that it is necessary to consider all of a debtor's anticipated property and income, including that which is exempt. See *Matter of Kochell*, 732 F.2d 564, 565 (7th Cir.1984). As stated in *Matter of Taff*, 10 B.R. 101 (Bankr.D.Conn. 1981):

> The foregoing review of the legislative background, . . . the rationale underlying the exemption laws, comments in . . . law review articles, . . . all lead me to conclude that the reasonably necessary standard *requires* that the court take into account other income and exempt property of the debtor, present and anticipated, . . . .

*Id.* at 107 (emphasis added).

The conclusions reached here are not inconsistent with *McLean v. Central States Pension Fund*, 762 F.2d 1204 (4th Cir.1985), which is distinguishable. In *McLean* the Fourth Circuit reversed an order that the trustee of an ERISA qualified pension fund pay pension funds due the debtor directly to the Chapter 13 trustee. Although the debtor had sought to fund the Chapter 13 plan in part with these pension funds, the court found that the debtor's interest in the pension fund was not property of the bankruptcy estate. It was excluded from the bankruptcy estate by 11 U.S.C. § 541(c)(2), because the pension fund contained an antiassignment provision required by the federal ERISA statute and the Internal Revenue Code, a position ultimately upheld by the Supreme Court in *Patterson v. Shumate, supra*. Because the debtor's interest in the ERISA

qualified pension fund was not property of the estate, the fund was not subject to a pay order by the bankruptcy court.

*McLean* was decided under the Bankruptcy Code before Section 1325(b) was added. It did not hold that exempt pension income could not be used for the debtor's Chapter 13 plan. Rather, *McLean* held only that a pay order could not be issued in violation of an antiassignment clause against the trustee of a qualified plan, in which the debtor's interest was excluded from the bankruptcy estate. There is a difference between including the availability of pension funds in a projected disposable income determination to fix the amount of a plan payment and seizing pension funds by mandatory process in violation of a statutorily prescribed antialienation provision. To illustrate, in dictum the *McLean* court suggested that an order directing delivery to the Chapter 13 trustee of a pension check payable to the debtor could be unobjectionable. *McLean*, 762 F.2d at 1208, fn. 3.

*McLean* involved an ERISA qualified pension fund that contained an antialienation clause required by I.R.C. § 401(a)(13), which excluded the fund from the bankruptcy estate under 11 U.S.C. § 541(c)(2). See *Patterson v. Shumate, supra*. Debtor's retirement plan considered here, however, is an I.R.A. that is qualified under I.R.C. § 408. I.R.A.s are excepted from ERISA's requirement to include an antialienation clause. 29 U.S.C. § 1051(6); 26 U.S.C. § 408. Compare 26 U.S.C. § 401(a)(13). As an I.R.A., Debtor's retirement plan was property of the estate that he exempted under 11 U.S.C. § 522(b)(1) and (2) and Maryland law. Consequently, the possible violation of an antialienation clause that is expressly respected by the Bankruptcy Code is not an issue.

▆ The factual distinction between *Schnabel* and the instant case is that in *Schnabel* the debtor was already receiving the pension and social security income that was exempt, and so the amount of regular income was fixed. However, in the instant case Debtor has not previously elected to draw regular payments from several of his separate, qualified I.R.A.s, although he is eligible to do so, without penalty, since his age is greater than 59–½. See 26 C.F.R.

§ 1.408–1(c)(6) (1993). Debtor argues that he would be penalized if he made withdrawals from his qualified I.R.A., because he would be required to pay ordinary income taxes on the withdrawals and he would lose the economic benefit of further tax-free compounding on the amounts withdrawn. The court does not consider these natural consequences to be penalties.

Debtor has stated he will draw from exempt assets, including his Maryland State pension, as needed to meet living expenses and his plan payments. The choice of what exempt assets to draw from will be made by Debtor. In addition to his Maryland State pension, Debtor may consider utilizing exempt tenants by the entireties property, such as equity in the family residence or a money market account; but he does not intend to use his I.R.A.s. Further, his proposed plan payment is limited to the amount Debtor is required to make by the best interests of unsecured creditors test, which is measured by the value of his nonexempt assets, and not by his disposable income. See 11 U.S.C. § 1325(a)(4).

Debtor contends the court may not consider, in determining his disposable income, what would be a reasonable amount to expect Debtor to draw from his I.R.A.s. This contention is rejected. Unlike some other exempt assets that are inherently not income producing, such as a homestead or home owned as tenants by the entirety, a qualified retirement account is intended to be a source of income in retirement. Retirement is effectively defined by statutory parameters set by the Internal Revenue Code. It means the beneficiary must be older than 59–½ to withdraw funds from a qualified retirement account without penalty. 26 C.F.R. § 1.408–1(c)(6). Debtor is 61, and he is eligible to withdraw funds without penalty.

■ Debtor argues that the court may not compel him to liquidate exempt assets for creditors, but Debtor's argument overstates the court's conclusion. The conclusion reached here is that the disposable income determination should take into account a reasonable expectation for a debtor's retirement income where the debtor is eligible to receive that income, but refuses to do so in an effort to limit the Chapter 13 plan payments that the debtor would otherwise be expected to make. Disposable income fixes the minimum plan payment, but it does not dictate what assets Debtor should use to make his plan payments.

■ Nevertheless, Debtor argues that he does not project he will elect to *receive* distributions from his I.R.A.s during the term of his plan, and Section 1325(b)(1)(B) is limited to "all of the debtor's projected disposable income to be *received*" during the first three years of the plan. (Emphasis added.). Debtor's argument stresses receipt in fact, while the statutory language addresses the anticipated future by using the modifiers "projected" and "to be". It would violate the parameters of the disposable income test that appear in the language of the statute to allow a debtor to defeat this minimum protection provided to creditors by refusing receipt of income that is available to him without penalty. This conclusion is not contrary, as Debtor contends, to holdings in *In re Stones,* 157 B.R. 669 (Bankr.S.D.Cal.1993) and *Education Assistance Corp. v. Zellner,* 827 F.2d 1222 (8th Cir.1987).

In *Stones* the court held that the disposable income of an employed debtor did not include money she could borrow from an ERISA qualified pension plan because a loan is not income and the trust corpus was not property of the estate under 11 U.S.C. § 541(c)(2) and *Patterson v. Shumate, supra.* The *Stones* court acknowledged case authority, however, that benefits from an ERISA plan were property of a Chapter 13 estate and could be used to fund a plan. 157 B.R. at 671. The focus in the instant case, unlike *Stones,* is on a reasonable income expectation for Debtor, and it is not liquidation of exempt assets, by borrowing or otherwise.

*Zellner* is also inapposite. When the Chapter 13 debtor in *Zellner* changed employment post-petition, he received a $6,000.00 lump-sum payment from his former employer's retirement fund, which he immediately transferred to an I.R.A. The court concluded that this distribution was property of the Chapter 13 estate that should have been considered as part of the best interests of creditors valuation under 11 U.S.C. § 1325(a)(4). 827 F.2d at 1225. Referencing its prior conclusion that the lump sum was an

assets of the estate, the court later stated without further explanation that "[t]he bankruptcy court was correct in concluding that it is not disposable income under Section 1325(b)(1)(B)." *Id.* at 1226. In the present case, however, the court is not classifying the corpus of a rollover contribution to an I.R.A. Rather it is addressing a reasonable installment of retirement income to Debtor that is permitted, but refused by Debtor in an effort to prevent it from being considered in his disposable income calculation.

In fixing the amount of a reasonable expectation for Debtor's retirement income to be used in making his disposable income determination, the special purpose of qualified retirement accounts must be respected. The qualification standards for I.R.A.s set minimum standards to encourage the creation of self-directed pension assets that will in fact be used for income in retirement, and not merely to accumulate wealth with favorable tax treatment. Consistently, there is a 10% penalty for early withdrawals before age 59–½. 26 C.F.R. § 1.408–1(c)(6). There is also a requirement that distributions must commence by the close of the taxable year in which the owner reaches age 70–½, and a minimum distribution is mandatory. 26 U.S.C. § 408(a)(6); 26 C.F.R. § 1.408–2(b)(6). One alternative measure of the minimum withdrawal is the actuarially determined amount needed to exhaust the fund during the lifetimes of the owner and the primary beneficiary. 26 C.F.R. § 1.408–2(b)(6)(ii), (iii)(D) and (v). The actuarial tables for these determinations exist as part of the implementing regulations under I.R.C. § 72 for the taxation of annuities. *Id.* at §§ 1.408–2(b)(6)(vi), 1.72–9. In applying the formula to calculate required distributions under I.R.Reg. § 1.408–2(b)(6)(v) after age 70–½, all I.R.A.s must be aggregated. 26 C.F.R. § 1.408–2(b)(6)(vii).

The determination of what amount constitutes a reasonable income expectation to be attributed to a qualified I.R.A. requires consideration of the particular circumstances of each Chapter 13 debtor. In the instant case, however, a possible approach might be application of the minimum distribution formulas established by the Internal Revenue Code and Regulations to Debtor's I.R.A.s, albeit calculated from a hypothetical, but permissive, commencement date earlier than Debtor's mandatory age for commencement. This approach appears to serve the dual statutory objectives. It would reasonably preserve Debtor's I.R.A.s for retirement within the applicable, statutory parameters for self-directed pension accounts; and it would also allow computation of a reasonable income expectation for Debtor's disposable income determination under 11 U.S.C. 1325(b).

### 4. Summary of Rulings.

The conclusions reached in this opinion allow Debtor in atypical circumstances to pursue his fresh start through Chapter 13, in a manner consistent with the statutory purposes of Chapter 13. Debtor may keep his property, preserve a meaningful amount of exempt funds for retirement, and obtain a discharge, provided he proposes a payment plan that reflects the economic reality of his entitlement to retirement income. The inclusion of a reasonable income expectation from Debtor's I.R.A.s in calculating his disposable income that is available for Chapter 13 plan payments will protect creditors' reasonable expectations and frustrate excessive asset protection by Debtor.

For the reasons set forth, Debtor may file this case and exempt his largest I.R.A. However, a reasonable income expectation must be attributed to Debtor's I.R.A. accounts in determining whether Debtor has proposed a plan that incorporates all of his projected disposable income in the first three years as required by 11 U.S.C. § 1325(b)(1)(B). A separate order will be entered to implement the conclusions reached in this opinion.