**In re Kevin Edward SHORT, Mary Ann Short, Debtors.**

**Bankruptcy No. 94–2514–RWV–13.**

United States Bankruptcy Court, S.D. Indiana.

Jan. 19, 1995.

Michael J. Siegel, Indianapolis, IN, for debtors.

Larry Pleasants, Indianapolis, IN, for General Cas.

Robert Brothers, Trustee, Indianapolis, IN.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

Before the Court is Debtors' Second Amended Chapter 13 Plan and the Objection to Confirmation of Debtors' Second Amended Chapter 13 Plan filed by General Casualty Insurance Company, Inc. ("General Casualty"). The Plan provides for plan payments over 48 months in an amount of $296.54 for 17 months, then $259.00 for the remaining 31

months. The Plan proposed to pay approximately 20% of general unsecured claims but, because of the failure of some creditors to file a proof of claim, will result in payments of approximately 28.5% of general unsecured claims.

General Casualty is listed on Debtors' Schedule F as the holder of an unsecured non-priority claim against Mrs. Short in the amount of $18,237.42. Mrs. Short embezzled that amount from her employer, Robert Stoner, D.D.S., who was insured by General Casualty. General Casualty reimbursed Dr. Stoner for the loss, and Dr. Stoner assigned his claim against Mrs. Short to General Casualty. Mrs. Short was prosecuted in state court and convicted of criminal charges related to the embezzlement. Neither a criminal fine nor restitution order was ordered by the state court; however, Mrs. Short does not dispute the validity of the debt.

Not surprisingly, Mrs. Short has left the employ of Dr. Stoner. While employed with him, Mrs. Short participated in Dr. Stoner's "target benefit" pension plan, the terms of which provide that Mrs. Short may elect to keep her money in the plan, roll it over into an IRA, or receive a lump sum payout of her pension benefits on January 1, 1995, of approximately $17,000.00. Mrs. Short intends to roll that amount into an individual retirement account, thereby avoiding the taxes and penalties which would be incurred by taking possession of the funds outright. Mrs. Short is not yet 59½ years old, and therefore not able to begin withdrawing funds from a qualified retirement account without paying a penalty. 26 C.F.R. § 1.408–1(c)(6).

■ General Casualty points out that the Debtors' proposed plan will pay approximately $5,200.00 of the $18,237.42 claim of General Casualty, and the remainder will be discharged upon completion of the Plan.[1] On that basis, General Casualty objects to the Second Amended Chapter 13 Plan, arguing that the "best efforts" requirement is not met, and asserting that Debtors should be required to use the money in the pension

---

1. It is quite possible that the debt to General Casualty would be nondischargeable in a Chapter 7; however, General Casualty concedes that the debt is dischargeable in a Chapter 13 under the "superdischarge" provisions of § 1328(a).

plan to fund a 100% dividend to unsecured creditors. Counsel for General Casualty suggests that a system which would allow a person to embezzle funds from an employer, then require the employer to pay a lump sum pension payout to the former employee, is unfair and unjust. Rather than commenting on the equities of the Bankruptcy Code, the Court will confine its analysis to the applicable law on this issue.

In order to confirm a Chapter 13 Plan, the Bankruptcy Code requires that:

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date(.)

11 U.S.C. § 1325(a)(4).

Debtors' schedules show assets consisting of (a) equity in the marital residence of approximately $13,000.00, (b) personal property with a value of $3,305.00, and (c) the interest in the subject pension. The property other than the pension is subject to a one-half interest in Kevin Short.

Indiana has opted out of the federal exemption statute contained in 11 U.S.C. § 522(f), and has enacted its own exemptions. Under the Indiana exemptions, all of the assets listed above are exempt property, including the subject pension. Ind.Code § 34–2–28–1 (1994). Therefore, if this proceeding had been filed under Chapter 7 of the Bankruptcy Code rather than Chapter 13, it would be a no-asset case, and general unsecured creditors would receive nothing. As stated above, Debtors' Second Amended Chapter 13 Plan proposes to pay an estimated 20% of allowed unsecured claims. Therefore, Debtors' Second Amended Chapter 13 Plan satisfies the requirement set forth in § 1325(a)(4).

General Casualty cites *In re Solomon*, 166 B.R. 832 (Bankr.Md.1994), for the proposition that Mrs. Short may be (and should be) required to pay all or a portion of the pension proceeds into the Chapter 13 Plan. The facts in *Solomon* merit review.

Dr. Solomon filed a Chapter 13 petition, listing as his only creditors four plaintiffs in tort suits filed against him. He listed them as contingent, unliquidated and disputed claimants, and listed the amount of their claims as zero. The tort claimants, filed claims in the aggregate amount of $160,030,000.00. Each claim had a civil complaint attached to it which alleged, among other things, that Dr. Solomon engaged in improper sexual conduct. Dr. Solomon scheduled assets with a value of $2,184,645.00, of which $2,140,501.25 was claimed exempt, leaving $44,143.75 in non-exempt assets. Of the amount claimed exempt, $1,413,888.00 was held in three individual retirement accounts.

Debtor's Chapter 13 Plan proposed to pay $750.00 per month for five years, or a total of $45,000.00, which is slightly more than the scheduled value of the non-exempt assets. Dr. Solomon was 61 years of age, and had voluntarily surrendered his medical license; accordingly, he had no income from his medical practice. Dr. Solomon stated that he did not plan to use any income from the three IRA's during the three year life of the plan.

The court in *Solomon* examined the "fundamental, public policy questions about the function and purpose of Chapter 13 ..." 166 B.R. at 837. The court noted that under a Chapter 7 liquidation, the creditors' claims, if proven, could be nondischargeable, possibly under § 523(a)(6) as a willful and malicious injury. The court also noted that under Chapter 13's broader discharge, the debts resulting from alleged intentional torts are dischargeable. *Id.*

The court went on to find Dr. Solomon eligible for Chapter 13 relief, but, on the issue of disposable income, the court noted that a plan cannot be confirmed over a creditor's objection unless "the plan provides that all of the debtor's projected disposable income ... will be applied to make payments under the plan." 11 U.S.C. § 1325(b)(1)(B). The court concluded that:

> (t)here is absolutely no language in the disposable income test or definition in Section 1325(b) to suggest that disposable income is limited to income that is not exempt or from nonexempt assets. To the contrary, it is consistent with the premises of Chapter 13 that a debtor's income from all sources, including income from exempt

assets, be included in the determination of disposable income.

166 B.R. at 841.

However, in making its finding, the court in *Solomon* placed much emphasis on the fact that Dr. Solomon was eligible to draw from his individual retirement accounts without penalty. The court states:

> The conclusion reached here is that the disposable income determination should take into account a reasonable expectation for the debtor's retirement income **where the debtor is eligible to receive that income, but refuses to do so in an effort to limit the Chapter 13 plan payments that the debtor would otherwise be expected to make.** (emphasis added).

166 B.R. at 844.

Here, Mrs. Short is 33 years old and to gain access to the pension proceeds would require her to pay a 10% penalty. 26 C.F.R. § 1.408–1(c)(6). This fact is a key distinction between the two cases and, for that reason, the Court finds *Solomon* to be inapplicable in this case. Debtors' failure to apply any or all of the $17,000.00 pension payout to their Chapter 13 Plan does not violate the "disposable income test" of § 1325(b)(1)(B) because Mrs. Short is not eligible to receive income from the qualified retirement account without penalty.

■ On the question of "good faith", in order to confirm the Plan, the Court must find, based upon the totality of the circumstances, that Debtors' Second Amended Chapter 13 Plan is in compliance with § 1325(a)(3) which requires that "the plan has been proposed in good faith and not by any means forbidden by law." See *In re Smith*, 848 F.2d 813 (7th Cir.1988) (utilizing "totality of the circumstances" test to determine if a Chapter 13 plan is proposed in good faith); *In re Rimgale*, 669 F.2d 426 (7th Cir.1982) (holding that good faith must be defined on a case-by-case basis and setting forth a non-exhaustive list of relevant factors, including whether the proposed payments indicate "a fundamental fairness in dealing with one's creditors (citation omitted)") 669 F.2d at 432–33 (footnotes omitted). A Chapter 13 plan is not per se in bad faith merely because it contemplates eventual discharge of a debt not dischargeable under Chapter 7. *In re Schaitz*, 913 F.2d 452 (7th Cir.1990); *In re Smith, supra.*

While confirmation of the Chapter 13 Plan in *Solomon* was denied on other grounds, comparing the "totality of the circumstances" in the *Solomon* case with those in the case at bar reveals this Court's rationale in reaching its conclusion.

In *Solomon*, the following facts are revealed:

> On Debtor's Statement of Financial Affairs he discloses that in the 90 days immediately preceding the commencement of the case he paid $71,390.84 on debts and reduced all other balances he owed to zero.... Debtor's Statement of Financial Affairs discloses in the year preceding his commencement of this case, gifts to individuals who appear to be family members in the aggregate amount of $52,477.00. Of the property claimed as exempt, $649,-077.00, including Debtor's family home and certain investments, is claimed exempt as tenancy by the entirety property, namely, with rights of survivorship that is not subject to the claims of only one spouse under Maryland common law. Debtor has claimed another $1,485,391.00 as exempt retirement accounts ...

166 B.R. at 835–36.

Dr. Solomon's intentions for filing his Chapter 13 Plan are rather transparent. After making preferential payments to creditors and avoidable transfers to family members, he sought to discharge otherwise non-dischargeable intentional tort claims by making minimal payments over a three-year period and without touching his sizeable exempt assets. It would be difficult to imagine facts which present a better case for finding lack of good faith.

In the case at bar, for some reason, the state court declined to enter a restitution order to impose a criminal fine in the embezzlement proceedings brought against Mrs. Smith. Accordingly, the state court's decision allows for the discharge of this debt in a Chapter 13 bankruptcy. See § 1328(a)(3).

Secondly, the Debtors, in coming to this Court for relief, proposed a Plan which voluntarily extended plan payments an additional year beyond the three-year requirement, thereby resulting in a larger dividend to unsecured creditors. Chapter 13 Debtors are not required to pay more than three years' disposable income into a plan in order to obtain a discharge under this chapter. See § 1322(d). The fact that Debtors chose to do so in this case is indicative of good faith.

Thirdly, the contention that this case was filed with the sole purpose of discharging an otherwise nondischargeable debt is undermined by the fact that the case was filed jointly by Mr. and Mrs. Short, rather than by Mrs. Short alone. The result of the joint filing is the submission of the disposable income of the nonoffending spouse to the Plan. In this case, Mr. Smith's income is much higher than that of Mrs. Smith, who now works as a babysitter in her home. These factors, taken together, lead the Court to the conclusion that the filing of the Plan in this case was not a thinly-veiled attempt to discharge what would otherwise be a nondischargeable debt, but rather a genuine attempt to deal with creditors in a fair and responsible manner. For these reasons, the Court finds that the Second Amended Chapter 13 Plan was submitted in good faith. Accordingly, General Casualty's Objection to Confirmation of Debtors' Second Amended Chapter 13 Plan is denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.