67 F.3d 1128
 76 A.F.T.R.2d 95-7124, 64 USLW 2274,
19 Employee Benefits Cas. 2065
 In re Neil SOLOMON, M.D., Debtor.
Neil SOLOMON, Plaintiff-Appellant,
v.
Ellen W. COSBY, Chapter 13 Trustee; Jane Coe; Mary Doe;
Jane Roe; John Roe, Defendants-Appellees.
In re Neil SOLOMON, M.D., Debtor.
Neil SOLOMON, Plaintiff-Appellee,
v.
Ellen W. COSBY, Chapter 13 Trustee, Defendant-Appellant,
v.
Jane COE; Mary Doe; Jane Roe; John Roe, Defendants-Appellees.
 Nos. 94-2198, 94-2263.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 5, 1995.
Decided Oct. 23, 1995.
 
 ARGUED: Alan M. Grochal, Tydings & Rosenberg, Baltimore, Maryland, for Appellant. Deborah Hunt Devan, Weinberg & Green, Baltimore, Maryland, for Appellee Cosby; Edward Charles Dolan, Hogan & Hartson, L.L.P., Washington, D.C., for Appellees Coe, Doe, and Roe. ON BRIEF: Paul Walter, Mary Fran Ebersole, Tydings & Rosenberg, Baltimore, Maryland, for Appellant. Shoshana Katz, Weinberg & Green, Baltimore, Maryland, for Appellee Cosby; James H. Lystad, Hogan & Hartson, L.L.P., Washington, D.C., for Appellees Coe, Doe, and Roe.
 Before WIDENER, WILKINSON, and MICHAEL, Circuit Judges.
 Reversed and remanded by published opinion. Judge WILKINSON wrote the majority opinion, in which Judge WIDENER joined. Judge MICHAEL wrote a dissenting opinion.
 OPINION
 WILKINSON, Circuit Judge:
 
 
 1
 This case presents the question whether a Chapter 13 debtor must include in his "disposable income" some portion of funds invested in various individual retirement accounts ("IRAs"). The bankruptcy court denied confirmation of the debtor's proposed Chapter 13 plan for failure to include hypothetical distributions from the IRAs in the disposable income to be paid under the plan. Because we believe that funds held in the debtor's IRAs but not distributed to the debtor do not constitute "disposable income" under 11 U.S.C. Sec. 1325, we reverse.
 
 I.
 
 2
 The debtor herein, Neil Solomon, M.D., filed a Chapter 13 bankruptcy petition on September 20, 1993; he filed his proposed Chapter 13 plan shortly thereafter. Dr. Solomon's only creditors are three former patients (and the spouse of one) who have sued him in tort for alleged sexual misconduct during the course of their treatment as his medical patients.* The plaintiffs claimed compensatory and punitive damages totaling approximately $160 million. Solomon scheduled each plaintiff's claim as contingent, unliquidated, and disputed and listed the amount of each claim as zero. Although these debts were arguably non-dischargeable under Chapter 7 since they arose from "willful and malicious injury by the debtor," 11 U.S.C. Sec. 523(a)(6), the claims could be discharged under the broader "super-discharge" available to Chapter 13 debtors. 11 U.S.C. Sec. 1328(a).
 
 
 3
 Solomon scheduled assets valued at $2,184,645, of which he claimed $2,140,501.25 to be exempt from the claims of his creditors. Of the assets claimed exempt, $1,413,888 is held in three individual retirement accounts. Federal law does not require that income be withdrawn from these accounts until the recipient reaches age 70 1/2. See 26 U.S.C. Sec. 408(a)(6); 26 C.F.R. Sec. 1.408-2(b)(6). Solomon, currently age 62, informed the bankruptcy court that he had no intention of withdrawing any funds from the IRAs during the term of the plan. Moreover, under Maryland law, the IRAs are exempt from execution by creditors. Md.Cts. & Jud.Proc.Code Ann. Sec. 11-504(h). Solomon was thus left with approximately $40,000 in non-exempt assets.
 
 
 4
 After his petition was filed, Solomon voluntarily surrendered his medical license and ceased practicing medicine. As a result, his net monthly income decreased substantially from the $14,800 initially disclosed in Schedule I to approximately $2,650, which consisted primarily of monthly mandatory distributions from his Maryland state pension. According to the plan, Solomon proposed to pay the Trustee $750 per month for an extended term of five years, 11 U.S.C. Sec. 1322(d), for a total payout to the creditors of $45,000. Solomon planned to use the remainder of his monthly income, together with income from investments and exempt assets other than his IRAs, to pay his normal living expenses.
 
 
 5
 In February 1994, the Chapter 13 Trustee and the creditors filed various objections to the proposed plan. Only the treatment of Solomon's three IRAs is relevant to this appeal. According to the Trustee, the IRAs should have been taken into account in determining the minimum amount Solomon should be required to pay under his Chapter 13 plan. See 11 U.S.C. Sec. 1325(b)(1)(B) (upon objection by trustee or unsecured creditor, when plan proposes less than full payment of unsecured claims, debtor must devote all his projected disposable income for typical three-year term to payments under the plan). The Trustee also objected to the plan on the ground that it did not satisfy the "good faith" requirement of Sec. 1325(a)(3), but the bankruptcy court declined to address this fact-dependent issue, preferring to decide questions such as the disposable income requirement that could be resolved as a matter of law.
 
 
 6
 The bankruptcy court agreed with the Trustee and denied confirmation on the ground that Solomon's plan failed to provide for payment of all his projected disposable income when it failed to include some minimum amount attributable to allowed distributions from his IRAs. Under applicable non-bankruptcy law, the bankruptcy court noted, Solomon has the right to receive periodic distributions from these accounts without suffering a tax "penalty," despite his stated intention not to take such distributions. On appeal, the district court affirmed. Solomon appeals, and the Trustee cross-appeals, arguing that confirmation should be denied since the plan was not filed in good faith.
 
 II.
 A.
 
 7
 The Trustee objected to confirmation of Solomon's Chapter 13 plan on the ground that the plan did not meet the "disposable income" requirement of Sec. 1325(b) since it failed to include hypothetical withdrawals from the IRAs in the calculation of Solomon's monthly income. We hold, however, that the funds invested in Solomon's IRAs are not "disposable income" within the meaning of Sec. 1325(b)(2).
 
 
 8
 The statute defines "disposable income" as "income which is received by the debtor and which is not reasonably necessary to be expended ... for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. Sec. 1325(b)(2). If the trustee or the holder of an allowed unsecured claim objects to the confirmation of a Chapter 13 plan and the plan proposes less than full payment of unsecured claims, the plan may be confirmed only if it provides for payment of "all of the debtor's projected disposable income" to be received during the life of the plan. 11 U.S.C. Sec. 1325(b)(1)(B).
 
 
 9
 Solomon's IRAs are not "income" under the clear terms of this section. Both the statutory definition of "disposable income" as income that is received by the debtor as well as the requirement that projected income must be calculated over the life of the plan contemplate income that a debtor is actually receiving at the time of confirmation. Projected disposable income typically is calculated by multiplying a debtor's monthly income at the time of confirmation by 36 months, the normal duration of a Chapter 13 plan, then determining the portion of that income which is "disposable" according to the statutory definition. See Anderson v. Satterlee (In re Anderson), 21 F.3d 355, 357 (9th Cir.1994). It is undisputed that, at the time of the confirmation hearing on Solomon's plan, he was not actually receiving any disbursements from his IRAs; he further insisted that he had no intention of withdrawing funds from the IRAs during the life of the plan.
 
 
 10
 On these facts, we cannot sanction the bankruptcy court's inclusion of some hypothetical amount of income from the IRAs in the calculation of disposable income. "[R]ather than engaging in hopeless speculation about the future," a court should determine projected disposable income by calculating a debtor's "present monthly income and expenditures" and extending those amounts over the life of the plan. In re Crompton, 73 B.R. 800, 808 (Bankr.E.D.Pa.1987). Solomon's present, regular monthly income does not include distributions from his IRAs, and the bankruptcy court's imputation of amounts from such speculative distributions in its calculation of disposable income is contrary to the plain terms of the statutory definition.
 
 
 11
 Cases such as In re Schnabel, 153 B.R. 809 (Bankr.N.D.Ill.1993), and In re Hagel, 171 B.R. 686 (Bankr.D.Mont.1994), are distinguishable: they involved debtors who, at the time the bankruptcy petition was filed, were receiving regular monthly pension or social security payments. Schnabel, 153 B.R. at 812; Hagel, 171 B.R. at 687 & n. 3. In this case, by contrast, Solomon receives no regular distributions from his IRAs, has indicated no intent to take such distributions during the life of the Chapter 13 plan, and is not required to do so by the Internal Revenue Code until he reaches age 70 1/2. See 26 U.S.C. Sec. 408(a)(6); 26 C.F.R. Sec. 1.408-2(b)(6). Schnabel and Hagel thus do not require that these accounts be treated as a source of hypothetical income regularly received by Solomon.
 
 B.
 
 12
 Although they are not a source of regular, periodic income, Solomon's IRAs are assets of the estate, much like a checking or savings account. See Education Assistance Corp. v. Zellner, 827 F.2d 1222, 1226 (8th Cir.1987) ($6,000 lump-sum payment from retirement fund, which Chapter 13 debtor transferred into IRA, was asset of the estate rather than disposable income); see also Official Bankr. Form 6, Schedule B (Personal Property) (listing "[i]nterests in IRA, ERISA, Keogh, or other pension or profit sharing plans" as personal property of the debtor); Official Bankr. Form 6, Summary of Schedules (debtor's real and personal property constitute assets of the estate). In fact, Solomon listed each of his IRAs as personal property in the schedules submitted to the bankruptcy court. In this regard, the IRAs are relevant not to the "disposable income" requirement, but rather to the "best interests of creditors" prerequisite for confirmation of a Chapter 13 plan. See 11 U.S.C. Sec. 1325(a)(4) (unsecured creditors must receive no less in a Chapter 13 proceeding than they would in a Chapter 7 liquidation proceeding).
 
 
 13
 Here, the debtor's IRAs would be "exempt" assets and thus unavailable to creditors in a Chapter 7 liquidation. Maryland has elected to opt out of the federal exemptions, see 11 U.S.C. Sec. 522(b); Md.Cts. & Jud.Proc.Code Ann. Sec. 11-504(g), and instead has established specific exemptions under state law. Solomon relies on one of these state-law exemptions, Md.Cts. & Jud.Proc.Code Ann. Sec. 11-504(h), which provides, in relevant part, that "any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan qualified under ... Sec. 408 ... of the United States Internal Revenue Code ... shall be exempt from any and all claims of the creditors of the beneficiary or participant...." Solomon's IRAs are qualified under 26 U.S.C. Sec. 408(a) and hence fall within the terms of the Maryland exemption.
 
 
 14
 Because the IRAs would be unavailable to creditors in a Chapter 7 proceeding by virtue of the state law exemption, creditors would receive nothing from those accounts if Solomon's non-exempt assets were to be liquidated. Thus, preserving the IRAs from the claims of Solomon's creditors in this Chapter 13 proceeding is both logically sound and in keeping with the Code. In fact, in a Chapter 7 proceeding, Solomon's creditors would be entitled to the proceeds from liquidation of non-exempt assets worth approximately $40,000. The $45,000 he proposes to pay the creditors under his Chapter 13 plan thus appears to satisfy the "best interests of creditors" prerequisite for confirmation. The Supreme Court has emphasized that the mere happenstance of bankruptcy should not result in a windfall to creditors. Patterson v. Shumate, 504 U.S. 753, 764, 112 S.Ct. 2242, 2249-50, 119 L.Ed.2d 519 (1992). Nor, we think, should a debtor's choice to proceed under Chapter 13 invariably entitle creditors to more than they would receive in Chapter 7, contrary to the mandate of the Bankruptcy Code.
 
 
 15
 Our holding today is consistent with the treatment accorded IRAs by the Internal Revenue Code. Subject to certain limitations, a taxpayer's contribution to an IRA is tax deductible, and the account accrues interest tax-free. 26 U.S.C. Secs. 219, 408(e); In re Chiz, 142 B.R. 592, 592-93 (Bankr.D.Mass.1992). As a general matter, only when the account holder takes a distribution from the account is the payment subject to tax. 26 U.S.C. Sec. 408(d). Moreover, a taxpayer need not take a distribution until he reaches age 70 1/2. 26 U.S.C. Sec. 408(a)(6); 26 C.F.R. Sec. 1.408-2(b)(6). In light of these provisions, we do not believe that the funds held in the accounts but not distributed to Solomon constitute "income" as that term is commonly understood. "Income is not a gain accruing to capital or a growth in the value of the investment, but is a gain, a profit, something of exchangeable value, proceeding from the property, severed from the capital, however invested or employed, and coming in, being derived, that is, received or drawn by the recipient for his separate use, benefit, and disposal." Black's Law Dictionary 687 (5th ed. 1979). See also 26 U.S.C. Sec. 408(d)(1) (subject to certain exceptions, "any amount paid or distributed out of an individual retirement plan shall be included in gross income by the payee or distributee") (emphasis added).
 
 
 16
 In sum, we do not think it a condition of invoking the protections of Chapter 13 that one withdraw pension or retirement income to fund a plan that otherwise meets the Sec. 1325 prerequisites for confirmation. A contrary holding could have devastating results for pension and retirement savings. By requiring an otherwise eligible Chapter 13 debtor to withdraw such monies to fund a Chapter 13 plan, we would effectively undercut the very purpose of retirement and pension plans: to ensure that workers have sufficient funds with which to support themselves and their dependents during their retirement years. We agree with the Third Circuit that "Congress has expressed a deep and continuing interest in the preservation of pension plans, and in encouraging retirement savings, as reflected in the statutes which have given us ERISA, Keogh plans and IRAs," Velis v. Kardanis, 949 F.2d 78, 82 (3d Cir.1991). We decline to undercut this clear congressional purpose by conditioning the availability of Chapter 13 relief on a debtor's agreement to withdraw funds from an IRA prior to the distribution date mandated by the Internal Revenue Code and its accompanying regulations.
 
 III.
 
 17
 Our holding does not mean, however, that Solomon is entitled to invoke the protections of Chapter 13. Whether his Chapter 13 plan will be confirmed hinges upon a finding by the bankruptcy court on remand that the debtor has proposed this plan in good faith. See 11 U.S.C. Sec. 1325(a)(3) (plan may be confirmed only if "proposed in good faith and not by any means forbidden by law").
 
 
 18
 In Neufeld v. Freeman, 794 F.2d 149 (4th Cir.1986), this court addressed the elements that inform the good faith determination. This totality-of-the-circumstances inquiry focuses on such factors as the percentage of proposed repayment to creditors, the debtor's financial situation, the period of time over which creditors will be paid, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing the facts of the case, the nature of the debtor's pre-petition conduct that gave rise to the debts, whether the debts would be dischargeable in a Chapter 7 proceeding, and any other unusual or exceptional problems the debtor faces. Id. at 152 (citing Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir.1982)). On remand, the bankruptcy court should consider relevant factors in its Sec. 1325(a)(3) analysis of Solomon's plan, mindful of the fact that the good faith inquiry is intended to prevent abuse of the provisions, purpose, or spirit of Chapter 13. Neufeld, 794 F.2d at 152.
 
 
 19
 It is here that the concerns of our dissenting brother are addressed. The dissent vents its understandable displeasure with the nature of the acts of which Solomon stands accused. It fashions on appeal a "Solomon Rule" which, however attractive in the particular case, would thwart the general intent of Congress to safeguard pension and retirement plans. The better approach is to require triers of fact in bankruptcy cases to review the good faith with which individual debtors attempt to invoke Chapter 13 protections. This good faith inquiry is expressly mandated under Sec. 1325(a)(3) of the Bankruptcy Code and has been expressly held by this circuit to encompass "both prepetition conduct and prior bankruptcy filings by the debtor." Neufeld, 794 F.2d at 150. Having the trier of fact determine whether Solomon failed to exercise good faith is preferable to reworking the law of Chapter 13 based on the circumstances of a single debtor. Our dissenting brother would do just that, however--in reaching the distasteful situation here, the dissent would compel debtors to prematurely withdraw and make available pension savings which they had no intention of using during the life of a Chapter 13 plan.
 
 IV.
 
 20
 For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for further proceedings.
 
 
 21
 REVERSED AND REMANDED.
 
 MICHAEL, Circuit Judge, dissenting:
 
 22
 I respectfully dissent.
 
 
 23
 Facing tort claims of sexual misconduct made by several former medical patients who seek damages of $160 million, the debtor, Neil Solomon, filed a bankruptcy petition. In an attempt to wipe out these claims under the broader "super-discharge" available under Chapter 13, Solomon proposes a plan that offers his former patients (his only creditors) a total of just $45,000, payable in monthly installments of $750 over the next five years. But Solomon, who has retired, refuses to make available to his creditors any income (which is readily accessible without penalty) from three exempt IRAs worth more than $1.4 million. He does not need any income from the IRAs for the reasonable maintenance and support of himself or any dependent. I would hold that income he could elect to receive without penalty from his IRAs may be counted as projected disposable income for purposes of his Chapter 13 plan. This result best comports with the language of section 1325(b) and the overall purposes of Chapter 13, which gives a debtor such as Solomon an enormous break under the "super-discharge."
 
 I.
 A.
 
 24
 A debtor can not be forced into Chapter 13 bankruptcy, as he can be into Chapter 7. The debtor alone makes the affirmative decision to seek the protections of Chapter 13 in order to obtain the "super-discharge." See 11 U.S.C. Sec. 303(a). Here, Solomon filed under Chapter 13 because only under that chapter can he wipe out the claims his patients made against him for sexual misconduct. "Super-discharge," however, does not come without a price, and indeed it should not. The debtor must be willing to sacrifice his projected disposable income for three years. Specifically, under section 1325(b)(1), when an objection is made and the Chapter 13 plan does not afford full payment of unsecured claims, the court may not approve the plan unless it "provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that first payment is due under the plan will be applied to make payments under the plan." Projected pension and social security payments are taken into account in calculating disposable income under Chapter 13. In re Hagel, 171 B.R. 686, 689 (Bankr.D.Mont.1994); In re Schnabel, 153 B.R. 809, 818 (Bankr.N.D.Ill.1993). Likewise, if a Chapter 13 debtor has retired and is old enough to take distributions from his IRA without penalty under the federal tax laws, his projected IRA distributions should be included in the disposable income calculation.[1] Including social security, pension or IRA payments in the disposable income calculation does not mean that the Chapter 13 debtor is thrown into the streets to beg or forced onto the public assistance rolls. Section 1325(b)(2) defines "disposable income" as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." Thus, even under Chapter 13, the claims of creditors are secondary to the reasonable needs of the debtor and his dependents. Yet once those needs are met, the creditors are entitled to the remaining income in the three-year period.
 
 
 25
 Although section 1325(b)(2) defines "disposable income" as "income which is received by the debtor," section 1325(b)(1)(B) calls for a "projection" of income for three years into the future. The court, not the debtor, has the final say in projecting the debtor's disposable income. 5 Collier on Bankruptcy p 1325.08[a] (15th ed. 1995). In the usual case, the projection is relatively straightforward. E.g., Anderson v. Satterlee (In re Anderson), 21 F.3d 355, 357 (9th Cir.1994) (court multiplies the debtor's monthly income by 36 and then determines how much of the total is income that is disposable). This, however, is not the usual case.
 
 
 26
 Solomon is 62 years old. Before January 1, 1994, he had a net monthly income of $14,800. As of January 1, 1994, Solomon reports a net monthly income of $2,650; of this amount, $2,146 is his state pension payment from Maryland. It is from the $2,650 that Solomon proposes to make monthly payments of $750 to his creditors. Solomon's monthly income has dropped substantially because he surrendered his medical license and stopped practicing medicine. He plans to support himself with his state pension and interest and dividends from exempt assets owned jointly with his wife.
 
 
 27
 The point here is simple: Solomon has retired. One would, therefore, expect (and could reasonably project) that Solomon would start to draw income from his IRAs. They are, after all, called retirement accounts.
 
 
 28
 The Internal Revenue Code supports this analysis. It allows a person to draw income without penalty from his IRA once he reaches the age of 59 1/2. See 26 U.S.C. Sec. 408(a)(6); 26 C.F.R. Sec. 1.408-1(b)(6). Congress therefore determined that 59 1/2 is a reasonable age to begin retirement. Because Solomon is 62, has retired, and can never return to the practice of medicine, it is reasonable to project that his disposable income during the next three years will include income from his IRAs.
 
 
 29
 Under Chapter 13 Solomon can still shield all of his assets, including exempt assets such as his IRAs. And he can obtain a "super-discharge" and free himself of the sexual misconduct claims. In return, Solomon must do one thing: pay all of his projected disposable income (including that from exempt assets) to his creditors during the relatively short life of his plan. This is a small price to pay for any debtor in such trouble, regardless of his disposable income level. The bankruptcy and district courts were right to refuse confirmation of a plan that did not project income from Solomon's IRAs.
 
 B.
 
 30
 The majority says that requiring a Chapter 13 debtor such as Solomon to contribute disposable IRA income "could have devastating results for pension and retirement savings." Ante at 1133. I respectfully disagree for three reasons.
 
 
 31
 First, the statutory definition of "disposable income" under section 1325(b)(2)(A) ensures that during the life of his plan Solomon (or any other Chapter 13 debtor) would always have sufficient funds for the maintenance and support of himself and his dependents. All of the reasonable living expenses of the debtor and his family come off the top before a penny is paid to creditors.
 
 
 32
 Second, section 1325(b) does not require that all of the funds in the IRAs be used to fund the Chapter 13 plan. Far from it. A retired Chapter 13 debtor would simply be required to include the amount he would reasonably be expected to withdraw as retirement income for three years. Section 1325(b)(1)(B) gives the bankruptcy court the ultimate responsibility to make the projection, and there exists an ample basis for making a logical and sensible one. Here, the bankruptcy court suggested applying the minimum distribution formulas established by the Internal Revenue Code and regulations. In re Solomon, 166 B.R. 832, 845 (Bankr.D.Md. 1994). For example, "[o]ne alternative measure of the minimum [yearly] withdrawal is the actuarially determined amount needed to exhaust the fund during the lifetimes of the owner and the primary beneficiary." Id. In any event, the IRS's formulas ensure a steady income stream from the IRA throughout a person's retirement years. In addition, the formulas produce a ready projection of future income. As the bankruptcy court rightly observed:
 
 
 33
 This approach appears to serve the dual statutory objectives. It would reasonably preserve Debtor's I.R.A.s for retirement within the applicable, statutory parameters for self-directed pension accounts; and it would also allow computation of a reasonable income expectation for Debtor's disposable income determination under 11 U.S.C. 1325(b).
 
 
 34
 Id. at 845. Thus, under the bankruptcy court's suggestion, a minimum annual IRA distribution would be dedicated to the payment of Solomon's creditors during the life of his plan. Thereafter, Solomon (or any other Chapter 13 debtor) would get all of his IRA distributions for the rest of his (projected) lifetime.
 
 
 35
 Third, persons who are not retired would not be required to include projected income from their IRAs. They would have the disposable income from their jobs to pay their creditors. However, if a retiree voluntarily invokes Chapter 13, it is only reasonable to require him to use any excess pension or IRA income to fund his plan.
 
 C.
 
 36
 The majority notes that paying projected IRA income to creditors goes beyond what is required by the "best interests of creditors" test for confirmation of a Chapter 13 plan.[2] Thus, according to the majority, because Solomon's IRAs would be exempt from liquidation in a Chapter 7 proceeding, his failure to include IRA income in his Chapter 13 plan "appears to satisfy the 'best interests of creditors' prerequisite for confirmation." Ante at 1132-33. Perhaps it does, but this does not dispose of the question before us today.
 
 
 37
 Satisfaction of the "best interests" test is but one prerequisite for confirmation of a Chapter 13 plan. The creditor must also satisfy the "disposable income" test. Therefore, I cannot accept the majority's suggestion that satisfaction of the "best interests" test results in satisfaction of the "disposable income" test. Using the "best interests" test to set the minimum or "floor" for payments to creditors under Chapter 13 would completely eviscerate the "disposable income" test of section 1325(b)(1)(B). See In re Schnabel, 153 B.R. at 815 ("[w]here assets may be claimed exempt, there is superimposed an entirely new floor [different from the Chapter 7 liquidation value], below which a confirmable plan may not fall--the Sec. 1325(b) test of 'disposable income' ").
 
 
 38
 Finally, allowing creditors to share in a retired debtor's projected disposable IRA income (for three years) under Chapter 13 does not violate the Supreme Court's admonition in Patterson v. Shumate, 504 U.S. 753, 764, 112 S.Ct. 2242, 2249-50, 119 L.Ed.2d 519 (1992), that the mere happenstance of bankruptcy should not result in a windfall to creditors. See ante at 1132-33. I reemphasize that Solomon himself voluntarily chose to seek the protection of "super-discharge" under Chapter 13. That choice subjected his plan to the "disposable income" test of section 1325(b)(1)(B) and placed his IRA income at risk. That choice was not happenstance; it was Solomon's considered decision. In fact, to hold that Solomon's projected disposable income does not include projected income from his IRAs results in a windfall to Solomon. It is a windfall that nullifies Congress's determination that "Chapter 13 proceedings ... look to [the debtor's] future income ... as a source of repayment of debt." S.Rep. No. 65, 98th Cong. 1st Sess. 20 (1983).
 
 II.
 
 39
 The majority remands for proceedings under section 1325(a)(3) to determine whether Solomon proposed his plan in good faith. Perhaps his creditors will ultimately achieve relief under that section. That possibility, however, does not change the fact that the bankruptcy and district courts have already correctly refused to confirm Solomon's Chapter 13 plan because it fails to meet the "disposable income" test under section 1325(b). I would let the judgment stand and put an end to the matter right now.
 
 
 
 *
 Solomon apparently paid all his other creditors in full before filing his Chapter 13 petition
 
 
 [1]
 The language of section 1325(b) makes no distinction between income from exempt assets (such as pension funds and IRAs) and income from non-exempt assets (such as marketable securities). This was not an oversight on the part of Congress. To receive the protections of "super-discharge," a debtor under Chapter 13 proposes to pay his debts over three years from future income. S.Rep. No. 65, 98th Cong. 1st Sess. 20 (1983). Also, even though such income is not shielded from creditors, a debtor's fresh start remains assured because the debtor may keep all of his assets, whether exempt or not. What the debtor must give up, however, is his projected disposable income during the life of his plan. It is irrelevant whether that income is derived from exempt or non-exempt assets. In re Hagel, 171 B.R. at 689; In re Schnabel, 153 B.R. at 817-18
 
 
 [2]
 Under the "best interests" test a Chapter 13 plan must provide unsecured creditors with no less value than they would receive if the debtor liquidated under Chapter 7. See 11 U.S.C. Sec. 1325(a)(4)