**In re Earl Evans HYLTON, II, Robin Roberts Hylton, Debtors.**

No. 07–70320.

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

Aug. 22, 2007.

Berrell F. Shrader, Blacksburg, VA, for Debtors.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

The matter before the court is the objection to the confirmation of the Debtors' proposed Chapter 13 Plan ("Plan") by eCAST Settlement Corporation ("eCAST"), a creditor in the Debtors' bankruptcy case. The Court conducted a hearing on the objection on April 25, 2007. Both parties submitted authorities in sup-

port of their respective positions. After due consideration of the evidence and authorities and for the reasons stated herein, the objection is overruled in part and sustained in part.

## BACKGROUND

The facts relevant to a decision in this matter are not in dispute. On February 28, 2007, the Debtors filed a voluntary petition for relief pursuant to Chapter 13 of the Bankruptcy Code.[1] Both Schedule I and Form B22C reflect a household size of four. Schedule I reflects total monthly gross income of $8,611.[2] Schedule J reflects monthly disposable income of $201.08. Form B22C reflects a gross monthly income of $8,907.59 [3] and monthly disposable income of $126.74.

The Debtors' list $73,986.90 of unsecured debt on Schedule F and $200,817.65 in secured debt on Schedule D, which reflects liens on the residence of the Debtors, two vehicles, a recreational boat, and household furniture. According to the terms of the vehicle loans, the vehicles will be paid off within the sixty months following the filing date of the Plan.[4] In calculating their monthly expenses on Form B22C, the Debtors claim the IRS Local Transportation Ownership Expense allowance for both vehicles.

On April 12, 2007, eCAST filed an objection to the confirmation of the Debtors' proposed Chapter 13 Plan. The objection raises two issues. The first issue is whether the Plan satisfies the disposable income test. Specifically, eCAST argues that the Debtors have improperly claimed the ownership expense deduction for their two vehicles, which will be owned free and clear of liens during at least some portion of their Plan, and their boat, which eCAST contends is an impermissible expense. The second issue is whether Section 1325(b)(1)(B), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), permits debtors with above median income to enter into a plan of shorter duration than sixty months.[5]

## DISCUSSION

This court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 151, 157, and 1334. This is a case filed under Title 11. The court may hear this core preceding under 28 U.S.C. § 157(b)(2). Venue is proper in this District under 28 U.S.C. § 1409(a).

Section 1325(a)(3) states that a court shall confirm a plan if, among other things, it is "proposed in good faith and not by any means forbidden by law." Section 1325(b)(1)(B) provides that, if either the trustee or the holder of an allowed, secured claim objects to confirmation of a plan, the court may not approve the plan unless, as of the effective date of the plan, "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period ... will be applied to make payments under the plan." The issues raised by the objec-

---

1. Because this case was commenced after October 16, 2005, it is subject to the amendments to the Bankruptcy Code made by the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA").

2. Annualized gross income per Schedule I is $103,938.60.

3. Annualized gross income per Form B22C is $106,891.08.

4. The vehicle payments will end in October 2009 and October 2011, if payments continue to be made in accordance with the terms of the loan agreement. See Docket Entry # 9.

5. The Chapter 13 Trustee also filed an objection to the confirmation of the Debtors' Plan. See Docket #'s 15 and 23. The Trustee's objection raises the same issue of plan duration raised by eCAST.

tion of eCAST turn on the interpretation of the phrase *"projected disposable income* to be received in the *applicable commitment period."* *Id.* (emphasis added). However, the determination of the issues raised by eCAST remain contingent upon a determination of whether the Debtors' income falls above or below the median income in the state where the Debtors reside.

## I. Calculation of Income under Official Form B22C

Chapter 13 debtors are required to file a calculation of current monthly income on Official Form B22C. Interim Bankruptcy Rule 1007(b)(6). If the calculation exceeds the statewide median income for a household of the same size, the debtors must then complete a calculation of disposable income. *Id.* The Debtors filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on February 28, 2007. The Debtors' reside in Virginia. The Debtors' household includes four members. According to Form B22C, the Debtors' total gross monthly income, derived from their average monthly income during the six months prior to filing the bankruptcy petition, is $8,907.59. Annualized, this current income amounts to $106,981.08. In Virginia, the median income for a four person household is $79,931.00.[6] Therefore, the Debtors' income is above the median.

## II. Projected Disposable Income

In calculating disposable income under Section 1325(b), the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") distinguishes between debtors with income above and those below the median family income for similarly-sized households. *In re Barr,*

341 B.R. 181, 185 (Bankr.M.D.N.C.2006). For debtors with below-median-income in the state where the debtor resides, disposable income is determined by using Schedules I and J, as was done prior to the passage of BAPCPA. *Barr,* 341 B.R. at 185. For the debtors with above-median-income in the state where the debtor resides, the amount of disposable income is determined by using the means test provided for in Section 707(b)(2). 11 U.S.C. § 1325(b)(3)(2006). Therefore, the disposable income of the Debtors in this case must be determined by using the means test. At issue in this case are the Debtors' vehicle and boat expenses, which the Debtors contend are allowed under the means test.

### A. Deductions for Vehicle Ownership Expense

■ In determining a disposable income figure, the means test requires an above-median debtor calculate expenses and deductions, pursuant to Section 707(b)(2)(A) and (B), using Form B22C. 11 U.S.C. § 1325(b)(3); *In re Girodes,* 350 B.R. 31, 37 (Bankr.M.D.N.C.2006). Section 707(b)(2)(A)(ii)(I), provides, in part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief[.]

11 U.S.C. § 707(b)(2)(A)(ii)(I).

The Local Standards include a standard for transportation. The Local Transportation Standards include an allowance for

---

**6.** *Census Bureau Median Family Income By Family Size,* August 3, 2007, *available at* http://www.usdoj.gov/ust/eo/bapcpa/ 20070201/bci_data/median_income_table. htm.

vehicle operating expenses and for vehicle ownership expenses. These standards vary depending on the region of the country where a debtor resides as well as the number of vehicles a debtor owns.

In this case, the Debtors took the ownership allowance for their two vehicles that will be owned free of any liens within the sixty months following the petition date. eCAST objects to the Debtors' claim of the ownership allowance, arguing that the Debtors may not claim the ownership expense for debt free vehicles. The courts are split concerning this issue.

A number of courts have concluded that a debtor may not claim the ownership allowance under the Local Transportation Standards if the debtor owns a vehicle debt free. *In re Harris*, 353 B.R. 304 (Bankr.E.D.Okla.2006); *In re Oliver*, 350 B.R. 294 (Bankr.W.D.Tex.2006); *In re McGuire*, 342 B.R. 608 (Bankr.W.D.Mo. 2006); *In re Hardacre*, 338 B.R. 718 (Bankr.N.D.Tex.2006). These courts rely upon a section of the Internal Revenue Manual, which instructs that "if a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense," but, "if a taxpayer has no car payment, only the operating cost portion of the transportation standard is used to figure the allowable transportation expense." Internal Revenue Manual, Financial Analysis Handbook § 5.15.1.7(4)(b). The Manual also provides that the ownership expense is allowed only for the "purchase and/or lease of a vehicle." Internal Revenue Manual, Financial Analysis Handbook § 5.8.5.5.2. Reliance upon the language of the Manual is based upon the Section 707(b)(2)(A)(ii)(I), which states that the debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts specified under the Local Transportation Standards. *McGuire*, 342 B.R. at 613. In short, these courts interpret

the plain language of Section 707(b)(2)(A)(ii)(I) to place a cap on a debtor's expense allowances.

Other courts have concluded that a debtor may claim an ownership allowance under the Local Transportation Standards if the debtor owns the vehicle debt free. *In re Lynch*, 368 B.R. 487 (Bankr.E.D.Va. 2007); *In re Enright*, 2007 WL 748432 (Bankr.M.D.N.C. Mar.6, 2007), 2007 Bankr.LEXIS 812; *In re Hartwick*, 352 B.R. 867 (Bankr.D.Minn.2006); *In re Fowler*, 349 B.R. 414 (Bankr.D.Del.2006). These courts read the language of Section 707(b)(2)(A)(ii)(I) to provide a fixed allowance, rather than a cap on the available deduction.

 This court finds the arguments for permitting the fixed ownership allowance persuasive. In interpreting the Bankruptcy Code, the starting point for the court's inquiry into congressional intent is the statutory language itself. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). "It is well established that 'when the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms.'" *Id.* (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (internal quotation marks omitted) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)))).

Section 707(b)(2)(A)(ii)(I) provides that "[t]he debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories specified as Other Necessary

Expenses." 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). The use of "applicable" with respect to National and Local Standards and "actual" with respect to Other Necessary Expenses indicates that Congress used these different terms to achieve different results. *See In re Enright,* 2007 WL 748432, at *7, 2007 Bankr.LEXIS 812, at *7; *In re Farrar–Johnson,* 353 B.R. at 230–31; *In re Fowler,* 349 B.R. at 418. To give these terms different meaning is fitting given that the allowances listed in the National and Local Standards are contingent upon where the debtor lives and the Other Necessary Expenses are not. *See In re Enright,* 2007 WL 748432, at *6, 2007 Bankr.LEXIS at *6 (citing *U.S. Trustee Program, Means Testing,* August 3, 2007, *available at* http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm). Therefore, the expenses under the Local Standards only need to be applicable to the debtor, "because of where he lives and how large his household is. It makes no difference whether he 'actually' has them." *In re Farrar–Johnson,* 353 B.R. at 231.

Furthermore, although this court finds the statutory language unambiguous, the legislative history of the statute supports the same finding. *United States v. Sheek,* 990 F.2d 150 152–53 (4th Cir.1993) ("Statutory construction must begin with the language of the statute and the court should not look beyond that language unless there is ambiguity."). As the court explained in *Fowler:*

> A prior version of the BAPCPA which was never passed defined "projected monthly net income" for the means test to require a calculation of expenses as follows:
> (A) the expense allowances under the applicable National Standards, Local Standards, and Other Necessary Expenses allowance (excluding payments for debts) for the debtor ... in the area in which the debtor resides as determined under *the Internal Revenue Service financial analysis* for expenses in effect as of the date of the order for relief.

H.R. 3150, 105th Congress (1998) (emphasis added). The reference to the Internal Revenue Service financial analysis was replaced by the language currently in section 707(b)(2)(A) which simply states that a debtor gets the "applicable monthly expense amounts specified under the National and Local Standards." 11 U.S.C. § 707(b)(2)(A)(ii)(I).

The change from the prior version evidences Congress' intent that the Courts not be bound by the financial analysis contained in the IRM and lends credence to the Court's conclusion that it should look only to the amounts set forth in the Local Standards. *See, e.g., Transcontinental & Western Air, Inc. v. Civil Aeronautics Bd.,* 336 U.S. 601, 606[, 69 S.Ct. 756, 93 L.Ed. 911] (1949) (relying on legislative history to prior unenacted bill for clarification of language used in bill that was ultimately enacted); *Springfield Indus. Corp. v. United States,* 663 F.Supp. 128, 11 Ct. Int'l Trade 331, 338 (1987), rev'd on other grounds, 842 F.2d 1284 (Fed.Cir. 1988) (acknowledging that "[s]ilence or lack of clarity at the point where crucial language is finally inserted can sometimes be clarified by [legislative] history, even from bills which did not pass in prior years" but ultimately holding that the legislative history was not helpful to illuminate the term because the enacted bill was too different from the prior version).

*In re Fowler,* 349 B.R. at 419. Therefore, the Debtors in this case may properly deduct the ownership expense for their two vehicles, even though they will be owned debt free during the course of their Plan.

## B. Deductions for Boat Expense

■ In this case, the Debtors also seek to deduct the monthly payment for debt listed as secured by their boat ("boat payment") as an expense when calculating their disposable income on Form B22C. eCAST objects to the Debtors' deduction of this expense, arguing that the boat payment must be reasonably necessary for the maintenance and support of the debtors.

Section 707(b)(2)(A)(iii) permits debtors to deduct their average monthly payments arising on account of secured debts. The deduction is for:

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii).

As discussed above, the starting point for the court's inquiry into congressional intent is the statutory language itself. *Lamie*, 540 U.S. at 534, 124 S.Ct. 1023. The language of the Section 707(b)(2)(A)(iii)(I) is clear in providing for the deduction of all secured debt that will become contractually due within the sixty months after the petition date. According to the Debtors' Plan, the last boat payment is due June 5, 2009, which is within sixty months after the petition date. Therefore, the Debtors, in computing the claimed deduction, will total the remaining balance of the debt through June 5, 2009 and divide that total by sixty. *See* 11 U.S.C. § 707(b)(2)(A)(iii)(I). There is no evidence that the debt securing the boat is of the kind discussed in Section 707(b)(2)(A)(iii)(II), therefore, it is not relevant to the computation of the Debtors' disposable income.

eCAST also attempts to find support for its position based upon the fact that those who have mortgages and secured auto loans must also account for these secured debts under Section 707(b)(2)(A)(iii) in combination with the allowances for IRS National and Local Standards under 707(b)(2)(A)(ii). As such, eCAST seems to conclude that all secured debts under Section 707(b)(2)(A)(iii) must fit into a set of IRS guidelines as described in Section 707(b)(2)(A)(ii). Such an argument, however, is misplaced.

Mortgages and secured auto loans may be deducted from a debtor's current monthly income under Section 707(b)(2)(A)(ii) as part of the expenses accounted for under the National and Local Standards. Mortgages and secured auto loans may also be deducted from a debtor's current monthly income as payments on account of secured debts under Section 707(b)(2)(A)(iii). Debtors, however, may not account for such expenses twice or, as some courts have described this issue, "double dip." *In re McGuire*, 342 B.R. 608, 612 (Bankr.W.D.Mo.2006). The potential for double-dipping is made possible because, while some debtors have mortgages and auto loans, others rent their living space and lease their automobiles. Double-dipping is avoided by requiring debtors deduct from the IRS Standard expenses the payments on their monthly mortgage and car payments. *In re McGuire*, 342 B.R. at 612. Thus, while certain secured debts accounted for in Section 707(b)(2)(A)(iii) may also be accounted for in Section 707(b)(2)(A)(ii), there is no

requirement for Section 707(b)(2)(A)(iii) debt to also be of an expense described in Section 707(b)(2)(A)(ii).

As pointed out by eCAST in its objection, the payment of secured debt on the Debtors' boat in this case does not fall into any of the expense categories set forth in Section 707(b)(2)(A)(ii), therefore, there is no risk of double-dipping. As such, the Debtors' monthly payments on account of the secured debt for their boat need not be reasonably necessary for the maintenance and support of the Debtors under the means test.

■■■ Notwithstanding the fact that the Debtors are entitled to account for the boat payments when calculating their disposable income under the means test, confirmation of a plan proposing to retain the boat is subject to the good faith test under 11 U.S.C. § 1325(a)(3). In the Fourth Circuit, a court's inquiry into whether a Chapter 13 plan has been proposed in good faith is governed by a totality of circumstances inquiry. *Neufeld v. Freeman,* 794 F.2d 149, 152 (4th Cir.1986) (citing *Deans v. O'Donnell,* 692 F.2d 968, 972 (4th Cir. 1982)). The inquiry focuses on factors such as the percentage of proposed repayment to creditors, the debtor's financial situation, the period of time over which creditors will be paid, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing the facts of the case, the nature of the debtor's pre-petition conduct that gave rise to the debts, whether the debts would be dischargeable in a Chapter 7 proceeding, and any other unusual or exceptional problems the debtor faces. *Id.*

■■■ Courts have denied confirmation of Chapter 13 plans that propose to pay for nonessential or luxury, secured assets. *See, e.g., In re Kasun,* 186 B.R. 62, 63–64 (Bankr.E.D.Va.1995).[7] These courts hold that such plans would discriminate against the debtors' unsecured creditors, *see* 11 U.S.C. § 1322(b)(1), and that such discrimination indicates that the plan was filed in bad faith. *See* 11 U.S.C. § 1325(a)(3); *Kasun,* 186 B.R. at 63–64. While an above-median debtor who proposes to retain a nonessential or luxury asset may not be doing so at the expense of unsecured creditors post-BAPCPA, because the return to general unsecured creditors under a Chapter 13 plan is guided by the means test, such a conclusion does not make this court any less mindful of the fact that "the good faith inquiry is intended to prevent abuse of the provisions, purpose, or spirit of Chapter 13." *Solomon v. Cosby (In re Solomon),* 67 F.3d 1128, 1134 (4th Cir. 1995) (citing *Neufeld,* 794 F.2d at 152). As such, this court concludes that the Debtors' proposal to retain their boat, which is used solely for recreational purposes, is subject to the Bankruptcy Code's good faith test.[8]

### III. Applicable Commitment Period

■■■ eCAST, along with the Chapter 13 Trustee, objects to the confirmation of the

---

7. In its objection to confirmation, eCAST cites *In re Webster,* 165 B.R. 173, 176 (Bankr. E.D.Va.1994), which addresses the Section 1322(b)(1) issue, but does not address good faith under Section 1325(a)(3). eCAST also cites *In re Cox,* 249 B.R. 29 (Bankr.N.D.Fla. 2000), which addresses this issue of substantial abuse under Section 707(b) when the Debtor reaffirmed the debt on a recreational boat.

8. At present, the impact on inclusion of the secured debt in the plan versus any potential deficiency should the asset be sold or surrendered is unknown. To achieve confirmation with the asset included in the plan, the Debtors will have to demonstrate that unsecured creditors are better off than they would be if the asset is excluded and the monthly payments on the secured debt are added into a monthly plan payment.

proposed plan arguing that an above-median debtor has an applicable commitment period of five years and that the Debtors' proposed Plan length is less than five years and does not pay all allowed unsecured creditors in full. Section 1325(b)(1) states:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1). The term applicable commitment period is defined in Section 1325(b)(4)(A), which provides that, if a debtor's income is below-median, then the applicable commitment period is three years and, if the debtor's income is above-median, as in this case, then the applicable commitment period is five years. A split of authority, however, exists as to whether the "applicable commitment period" is a purely time requirement (herein "temporal") or a monetary multiplier requirement

(herein "multiplier"). *See, e.g., In re Enright,* 2007 WL 748432, at *6, 2007 Bankr.LEXIS 812, at *6 (providing a representative list of cases addressing the "applicable commitment period").

Debtors assert that "applicable commitment period" is a multiplier and that a confirmable plan need only include an amount of projected disposable income equal to that which would be received during the "applicable commitment period." Thus, the Debtors interpret Section 1325(b)(4)(A) to mandate a specific return to unsecured creditors, which is calculated by projecting a debtor's disposable income over the "applicable commitment period," but may be paid over a period of a shorter duration than the "applicable commitment period."

While this interpretation of Section 1325(b)(4)(A) finds support in some courts, this court agrees with the reasoning of the majority of courts, which have concluded that the "applicable commitment period" is a temporal requirement. *See, e.g., In re Girodes,* 350 B.R. 31, 35 (Bankr.M.D.N.C. 2006). These courts find support in the plain language of the statute, having determined that "[t]he use of the term 'period' implies time period rather than amount." *In re Girodes,* 350 B.R. at 35. This conclusion is bolstered by the numerous temporal references made throughout the Bankruptcy Code,[9] which stand in contrast to equally numerous multiplier require-

---

9. As noted in *In re Girodes,* 350 B.R. 31, 35 (Bankr.M.D.N.C.2006):

> The use of the term "period" implies time period rather than amount. Temporal references are made throughout Chapter 13 of the Bankruptcy Code. For example, § 1322(a)(4) states:
> [A] plan may provide for less than full payment of all amounts owed for a claim entitled to priority under section 507(a)(1)(B) only if the plan provides that all of the debtor's projected disposable income for a 5–year period beginning on the date that the first payment is due under the plan will

> be applied to make payments under the plan.
> Section 1322(d)(1) provides that if a debtor is above the median income, "the plan may not provide for payments over a period that is longer than 5 years." If a debtor is below the median income, "the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years." 11 U.S.C. § 1322(d)(2).
> *Id.* at 35.

ments.[10] *See Keene Corp. v. United States,* 508 U.S. 200, 208, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks & alterations omitted)); *see also Gaffney v. Riverboat Servs. of Indiana, Inc.,* 451 F.3d 424, 445 (7th Cir.2006) (noting that the interpretation of words in a statute is dependent upon the context in which they appear).

## CONCLUSION

For the above-stated reasons, the court concludes that the plain language of Section 707(b)(2)(A)(ii)(I) permits the Debtors to take the transportation ownership allowance on their vehicles even though they will be owned debt free at some point during the course of a confirmed Chapter 13 Plan. The plain language of Section 707(b)(2)(A)(iii)(I) also permits the Debtors to reduce their projected disposable income by the average monthly payments on account of the debt securing their boat. Finally, the plain language of Section 1325(b)(4)(A) requires the Debtors' to propose a sixty month plan. Therefore, the Debtors' Plan does not comply with the requirements of Section 1325(b) and may not be confirmed. Accordingly, it is

## ORDERED:

That the confirmation of the Debtors' Chapter 13 Plan is denied.

---

**10.** In *In re Slusher,* 359 B.R. 290, 301–02 (Bankr.D.Nev.2007), the court concluded:

Had Congress wanted to signify a multiplicand, rather than a temporal period, it could easily have done so; it did just that in numerous other areas of the Bankruptcy Code, including other areas of Section 1325. *See, e.g.,* 11 U.S.C. §§ 507(a)(5)(B)(i) ("the number of employees covered by each such plan multiplied by $ 10,000");

Copies of this order are directed to be sent to counsel for the Debtor, Berrell F. Shrader, Esq., Colony Park Suite 303, 1999 South Main Street, Blacksburg, Virginia 24060; counsel for eCAST Settlement Corporation, Matthew Huebschman, Esq., Shenandoah Legal Group, P.C., 310 South Jefferson Street, P.O. Box 75, Roanoke, Virginia 24002; and to Rebecca Connelly, Esq., P.O. Box 1001, Roanoke, Virginia 24005.

704(b)(2); 707(b)(2)(A)(i) ("if the debtor's current monthly income, reduced by the amounts determined under clauses (ii), (iii), or (iv), and multiplied by 60 is not less than"); 707(b)(2)(B)(iv); 707(b)(6); 707(b)(7)(A); 1322(d)(1); 1322(d)(2); 1325(b)(3) ("if the debtor has current monthly income, when multiplied by 12"); 1325(b)(4)(A)(2); 1326(b)(3)(B)(ii). *Id.* at 301–02.